**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| In Re Flowers Foods, Inc. Securities Litigation | Case No. 7:16-CV-00222-WLS CLASS ACTION |

## <u>REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.    ARGUMENT ......................................................................................................... 2

    A.    Defendants Do Not Seriously Dispute that the Proposed Class Satisfies the Requirements of Rule 23(a) .................................................................................. 2

    B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3) .......................... 3

        1.    Common Questions of Law and Fact Predominate .................................... 3

        2.    Plaintiffs Demonstrated That Damages Can Be Established on a Class-Wide Basis .............................................................................................. 6

            a.    Plaintiffs' Theories of Liability Are Consistent with Their Theory of Damages .................................................................................... 6

            b.    Defendants' Attempt To Shorten the Proposed Class Period By Raising A Truth-On-The-Market Defense Is Premature ................ 8

III.    CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

<u>CASES</u>

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)........................................................................................................ 9

*Arkansas Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*,
879 F.3d 474 (2d Cir. 2018)............................................................................................ 4

*Basic v. Levinson*,
485 U.S. 224 (1988)......................................................................................................... 4

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1089) .................................................................................... 4

*Cheney v. Cyberguard Corp.*,
213 F.R.D. 484 (S.D. Fla. 2003)................................................................................. 2, 3

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*,
322 F. Supp. 3d 676 (D. Md. 2018) ................................................................................ 5

*City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*,
2015 WL 5097883 (D.N.J. Aug. 31, 2015) ............................................................... 8, 10

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)........................................................................................................... 6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
309 F.R.D. 251 (N.D. Tex. 2015) ................................................................................. 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)..................................................................................................... 4, 8

*In re Amerifirst Sec. Litig.*,
139 F.R.D. 423 (S.D. Fla. 1991)..................................................................................... 2

*In re BP p.l.c. Sec. Litig.*,
2013 WL 6388408 (S.D. Tex. Dec. 6, 2013).................................................................. 6

*In re BP p.l.c. Sec. Litig.*,
2014 WL 2112823 (S.D. Tex. 2014) ............................................................................... 6

*In re Checking Account Overdraft Litig.*,
307 F.R.D. 656 (S.D. Fla. 2015)..................................................................................... 6

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ................................................................................ 6

*In re Diamond Foods, Inc., Securities Litig.*,
295 F.R.D. 240 (N.D. Cal. 2013)......................................................................... 10

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
571 F. Supp. 2d 1315 (N.D. Ga. 2007) .................................................................. 9

*In re Symbol Techs., Inc. Sec. Litig.*,
2015 WL 3915477 (E.D.N.Y. June 25, 2015) ...................................................... 10

*In re Theragenics Corp. Sec. Litig.*,
205 F.R.D. 687 (N.D. Ga. 2002)............................................................................ 2

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
2017 WL 4297450 (D.S.C. Sept. 28, 2017)......................................................... 10

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 728 (11th Cir. 1987) ............................................................................... 3

*Krogman v. Sterrit*,
202 F.R.D. 467 (N.D. Tex. 2001) ...................................................................... 4, 5

*Ludlow v. BP, P.L.C.*,
800 F.3d 674 (5th Cir. 2015) ..................................................................... 6, 7, 8, 9

*Luna v. Marvell Tech. Grp., Ltd.*,
2017 WL 4865559 (N.D. Cal. Oct. 27, 2017)........................................................ 8

*Monroe Cty. Employees' Ret. Sys. v. YPF Sociedad Anonima*,
15 F. Supp. 3d 336 (S.D.N.Y. 2014)...................................................................... 9

*Ohio Pub. Employees Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ..................................................... 5

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015)................................................................................... 6

*Thorpe v. Walter Inv. Mgmt., Corp.*,
2016 WL 4006661 (S.D. Fla. Mar. 16, 2016)............................................... 2, 8, 10

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
325 F.R.D. 280 (D. Minn. 2018)............................................................................ 9

REPLY IN SUPPORT OF MOTION

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) ............................................................................................ 4, 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................................... 2

## I.    INTRODUCTION

Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Opp.") (Doc. 94) does nothing to change the fact that class certification is appropriate in this case.[1] As set forth in Plaintiffs' Motion for Class Certification ("Motion") (Doc. 92), Plaintiffs satisfy each element of Rule 23(a) as well as Rule 23(b)(3).    Indeed, Defendants concede without any discussion or dispute that Plaintiffs satisfied virtually all of the Rule 23 class certification requirements.

Defendants' only arguments in opposition to class certification are: (1) Plaintiffs allegedly do not demonstrate that Flowers' securities traded in an efficient market (Opp. at 8-10); (2) Flowers' stock price decline on August 10 and 11, 2016 was not due to the correction of alleged misrepresentations because the market was purportedly aware of the alleged risks prior to, or no later than, May 28, 2015 (*id.* at 10-14); and (3) Plaintiffs purportedly have not set forth a damages model for calculating damages on a class-wide basis that is consistent with Plaintiffs' theory of liability (*id.* at 14-20).

Defendants' arguments fail.  First, Plaintiffs' expert, Dr. Steven P. Feinstein, Ph.D., CFA, demonstrates that Flowers' stock traded in an efficient market, and Defendants' expert, Professor René Stulz, does not dispute many of Dr. Feinstein's findings.[2]  Second, Defendants raise the same truth-on-the-market argument that the Court has repeatedly considered and rejected.  Doc.

---

[1]    Unless otherwise indicated, all emphasis is added and all internal citations and footnotes are omitted.  All ("Doc") references are to entries on the Court's Electronic Case Filing System. Unless indicated otherwise, all paragraph references ("¶") are to Plaintiffs' Consolidated Class Action Complaint ("Complaint"), all emphasis is added, all citations and internal quotations are omitted, and all "Rules" references are to the Federal Rules of Civil Procedure.  Defendants are Flowers Foods, Inc. ("Flowers" or the "Company"), George E. Deese, Allen L. Shiver, Steve Kinsey, and Karyl H. Lauder (collectively "Defendants").  The Class Period is from February 7, 2013 to August 10, 2016, inclusive ("Class Period").

[2]    *See* Declaration of Ex Kano S. Sams II in Support of Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification and Plaintiffs' Motion to Exclude the Report and Opinions of René M. Stulz ("Sams Decl."), Exhibit ("Ex") 1, ¶¶13, 19, 20.

68 at 17 and Doc. 84 at 2.  Regardless, Defendants attempt to rely on information that did not fully and completely apprise investors of the known risks confronting Flowers during the Class Period.  Finally, Plaintiffs have set forth a model for calculating damages on a class-wide basis that is consistent with Plaintiffs' theories of liability and the orders of the Court.   Defendants fail to overcome the principle that "class actions in securities fraud cases have received favorable treatment in the Eleventh Circuit," *Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *4 (S.D. Fla. Mar. 16, 2016), and that denying class certification "would be inconsistent with the overwhelming majority of the published decisions in this area."  *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 697 (N.D. Ga. 2002).  The Court should certify this case as a class action.

## II.    ARGUMENT

### A.    Defendants Do Not Seriously Dispute that the Proposed Class Satisfies the Requirements of Rule 23(a)

Defendants ignore – and thereby concede – that Plaintiffs satisfy the requirements of Rule 23(a), including numerosity,[3] commonality,[4] and typicality.[5]  Regarding adequacy, Rule 23(a)(4) permits class certification here because "the representative parties will fairly and

---

[3]    *See* Doc. 92-3, ¶¶44-46, 76-78; *Thorpe*, 2016 WL 4006661, at *6 ("There is a firm recognition that Rule 23(a)(1) is satisfied in a securities fraud action where securities are traded in a national public exchange.").

[4]    Class certification is proper under Rule 23(a)(2) if there are questions of law or fact common to the class that can "generate common answers apt to drive the resolution of the litigation" and that are "of such a nature that [they are] capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Plaintiffs adequately allege commonality. *See, e.g.*, ¶¶311, 330-31, 339-42; *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003).

[5]    Rule 23(a)(3) requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "As long as Plaintiffs assert, as they do here, that Defendants committed the same wrongful acts in the same manner against all members of the class, they establish the necessary typicality."  *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 429 (S.D. Fla. 1991); Doc. 92-4, ¶2; Doc. 92-5, ¶2.

adequately protect the interests of the class."[6]

Defendants' only challenge to adequacy is in a footnote, wherein they claim that: (1) Plaintiff Matthews is purportedly inadequate because "he is unsure if he is willing to testify at trial, and he is unwilling to attend the duration of trial;" and (2) Plaintiff Hendley is purportedly inadequate if the Court were to shorten the Class Period to May 28, 2015.  Opp. at 12 n.10.  Both adequacy arguments fail because, as demonstrated below, it would be improper for the Court to shorten the Class Period, and Defendants have not shown that Plaintiffs' "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 728 (11th Cir. 1987).[7]

**B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3)**

Class certification is proper under Rule 23(b)(3) where "the questions of law or fact common to class members predominate over any questions affecting only individual members" and where "a class action is superior to other available methods for fairly and effectively adjudicating the controversy."  The proposed Class satisfies both requirements.[8]

**1.    Common Questions of Law and Fact Predominate**

In a securities fraud action, plaintiffs are entitled to a presumption that all plaintiffs relied

---

[6]    Plaintiff Matthews testified that "I'm representing a class of people that, that have been damaged by some action that the company's taken."  Doc. 95-28, at 87; *see also* Doc. 92-4, ¶¶3-8.  Plaintiff Hendley testified that "my responsibility is to represent the entire class, not just my specific situation."  Sams. Decl., Ex. 2 at 54; *see also* Doc. 92-5, ¶¶3-8.  Defendants do not dispute the adequacy of Lead Counsel.

[7]    Plaintiff Matthews declared under oath that he is "willing to provide testimony at deposition or at trial if necessary."  Doc. 92-4, ¶5.  Plaintiff Matthews expressed concern when asked about remaining in Valdosta "for the whole trial even if it takes a couple of weeks" (Doc. 95-28, at 89), but Defendants cite no authority holding that a class representative must not only testify at trial, but must remain throughout the duration of the trial.

[8]    Defendants do not dispute that here "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Cheney*, 213 F.R.D. at 502.

on defendants' misrepresentations – establishing commonality of the reliance element – "so long as [the misrepresentation] was reflected in the market price [of securities] at the time of [the] transaction." *Basic v. Levinson*, 485 U.S. 224, 247 (1988); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) ("*Halliburton I*"). The *Basic* presumption can be rebutted at the class certification stage with evidence that the defendant's misrepresentation had no price impact. *Halliburton Co. v. Erica P. John Fund, Inc. ("Halliburton II")*, 134 S. Ct. 2398, 2414 (2014). Defendants, however, "bear the burden of persuasion to rebut the *Basic* presumption by a preponderance of the evidence." *Arkansas Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 478 (2d Cir. 2018). Thus, Defendants "must demonstrate that the misrepresentation did not in fact affect the stock's price." *Id.* at 484.

In his report, Dr. Feinstein demonstrated that each of the factors set forth within *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1089), and *Krogman v. Sterrit*, 202 F.R.D. 467 (N.D. Tex. 2001), support a finding that the market for Flowers securities was efficient. Doc. 92-3, ¶¶17-19; 33-137. Professor Stulz did not dispute most of Dr. Feinstein's findings. Sams Decl., Ex. 3, at 70-91. Professor Stulz's primary challenge to Dr. Feinstein's report is that a purported lack of price impact rebuts any presumption of reliance. Doc. 95-2, ¶¶41-78.

Dr. Feinstein's rebuttal report ("Feinstein Rebuttal"), however, demonstrates that Defendants have not satisfied their burden of persuasion to rebut the *Basic* presumption by a preponderance of the evidence. Sams Decl., Ex. 1. Among other things, Dr. Feinstein notes that Professor Stulz's price-impact analysis rests upon his denial of Plaintiffs' allegations. *Id.* at ¶¶42-53. Specifically, Dr. Feinstein opines that a more thorough review of the analyst reports upon which Professor Stulz relies demonstrates that market participants were unaware of Flowers' true exposure to the risks alleged in the Complaint. *Id.* at ¶¶54-57. Dr. Feinstein also

concludes that Professor Stulz's price-impact analysis mistakes awareness of some risk for complete comprehension of specific risks. *Id*. at ¶¶58-60. Indeed, Professor Stulz made nearly identical price-impact arguments in *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 691 (D. Md. 2018), and the court concluded that "Defendants have failed to rebut the presumption of reliance by showing that there was no price impact caused by the alleged misstatements." *Id*. at 690–91. Additionally, the premise of Professor Stulz's analysis conflicts with the requirement that "the Court must accept the allegations in the Complaint as being true in considering class certification." *Thorpe*, 2016 WL 400661, at *4.[9]



---

[9]   Defendants suggest that an opinion issued in *Ohio Pub. Employees Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) undermines Dr. Feinstein's analysis here. Opp. at 3, 19. As Dr. Feinstein testified, however, the facts and analysis conducted in that case were vastly different from those here. Doc. 95-29, at 73-136. Additionally, the plaintiff in that case has appealed the ruling. Sams Decl., Ex. 4.

████████████████████████████████████████████████

████████████████████████████████████████

### 2.   Plaintiffs Demonstrated That Damages Can Be Established on a Class-Wide Basis

The damages model established by Dr. Feinstein's report satisfies Rule 23(b)(3).  The model comports with Plaintiffs' theory of liability, the facts alleged, and this Court's orders. Defendants' liability stems from Flowers' misstatements regarding the risks of its misclassification of distributors, and the loss forming the basis for Plaintiffs' damages model derives from the inflated stock price caused by those misstatements.  Thus, Rule 23(b)(3) is satisfied.

### a.   Plaintiffs' Theories of Liability Are Consistent with Their Theory of Damages

Plaintiffs' damages model comports with both Plaintiffs' corrective disclosure theory and materialization of the risk theory.[10]  The decision in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), has "no impact on cases such as the present one, in which predominance [is] based not on common issues of damages but on the numerous common issues of liability."[11]  In fact, the *BP* cases heavily relied on by Defendants actually ***support*** certification here.[12]  For example, the "Post-Spill" class ultimately certified and affirmed in *BP III* relied on a damages theory that "Defendants misrepresented the internal estimates of the oil spill; that the stock market price

---

[10]   Feinstein Report at ¶142(i).  Unlike in *Comcast*, where the district court allowed only one of four legal theories to proceed, here the Court authorized both corrective disclosure and materialization of the risk theories of 10(b) liability.  Doc. 68 at 34-39; *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 687 (5th Cir. 2015) ("*BP III*").

[11]   *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 666 n.5 (S.D. Fla. 2015).

[12]   *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) ("*BP I*"); *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823 (S.D. Tex. 2014) ("*BP II*").

failed to fall to the level reflecting the magnitude of the crisis facing BP; that the market learned the truth; and that the stock market price corrected." *BP III*, 800 F.3d at 680.  Plaintiffs similarly allege that Defendants misrepresented their internal estimates of the risks of misclassification; that the stock price failed to reflect such risk; that the market eventually learned more of the truth; and that the stock price corrected following those disclosures.  ¶¶42-47, 114, 162, 177, 214, 222, 270, 278, 309-30; Doc 92-3, ¶142; Sams Decl., Ex. 1, ¶¶61, 77.[13]

As Defendants admit, at the time of the announcement of the DOL compliance review, the existential misclassification risk facing Flowers ***had not yet occurred***.[14]  As such, class members would not receive an "impermissible windfall" by recovering losses caused by the realization of the existential risk threatened by the DOL compliance review.  *BP III*, 800 F.3d at 688.  Flowers' stock price drop at the end of the Class Period reflected increased probabilities of an existential risk to Flowers at a future date.  Sams Decl., Ex. 1, ¶77.  Even if, as Defendants now argue, the August 2016 disclosures reflect the materialization of the risks of misclassification, rather than the consequences of nondisclosure, Dr. Feinstein's damages methodology allows for the removal of corrective events later found to not correct the

---

[13]    By contrast, the "Pre-Spill" class sought consequential damages stemming from the spill itself alleged to have arisen from Defendants' inducement of transactions through understatement of the risk of the Deepwater Horizon explosion. *BP II* at *59-*60; *BP III* at 690-91.  Here, Plaintiffs' damages theory does not rely on an inducement theory to recover damages, but instead measures "the difference between the inflation on the date the shares were purchased and the inflation on the date those same shares were subsequently sold, excluding any inflation dissipation caused by factors other than corrective disclosure."  Doc. 92-3, ¶142(iii).

[14]    *Compare* Doc. 77 at 2, n.3 ("Fatal to this theory of loss causation, Plaintiff does not allege how this risk materialized – nor can he, Flowers has ***not*** incurred liability") with Opp. at 18 ("The materialization of that risk of a government investigation occurred on August 9, 2016, when the DOL notified Flowers of its compliance review (*i.e.*, a government investigation) . . . ."); Doc. 95-2, at ¶15(c) (DOL review announcement "was a materialization of a known risk ..").

misrepresentations.  Doc. 92-3, ¶142.[15]

Defendants contend that Dr. Feinstein's opinion is insufficient because Dr. Feinstein failed to specify how he would deal with various damage and loss causation issues.  Opp. at 15-16.  This argument "misperceives the holding of *Comcast.*"[16]  The claims of both Plaintiffs and the Class relate to Defendants' misrepresentations and will rely on the same facts and legal theories to establish liability.  Doc. 92-1, at 9-12.  While Defendants speculate about potential challenges in calculating damages, none of these issues will affect class members differently except insofar as calculations based on each class member's stockholdings.[17]  As such, Plaintiffs' proposed damage model is consonant with their theory of liability and satisfies Rule 23(b)(3).

### b.    Defendants' Attempt To Shorten the Proposed Class Period By Raising A Truth-On-The-Market Defense Is Premature

Defendants repeatedly recast Plaintiffs' allegations and revisit the previous findings of the Court to support their request for a shortened Class Period.[18]  For instance, Defendants argue

---

[15]    *BP III*, 800 F.3d at 687-88 ("Plaintiffs must prove that the portion of the price fall that they seek in damages is directly attributable to the misrepresentation, so that they do not recover a windfall.  But they do not need to prove it at the certification stage."), 689 ("The *ability* to do so, not the actual execution of that correction, is what *Comcast* requires at this stage.").

[16]    *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4865559, at *5 (N.D. Cal. Oct. 27, 2017). This is not "an attack on his damage model, but is rather an inquiry into loss causation.  Loss causation, however, need not be analyzed at the class certification stage."  *Id.* (citing *Halliburton I*, 563 U.S. at 807) ("The question presented in this case is whether securities fraud plaintiffs must also prove loss causation in order to obtain class certification.  We hold that they need not.")); *BP III*, 800 F.3d at 685 ("*Comcast* requires a 'sound' methodology, not certainty.").

[17]    *See, e.g.*, *Thorpe*, 2016 WL 4006661, at *16 ("nothing in *Comcast* requires an expert to perform his analyses at the class certification stage."); *City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5097883, at *13 (D.N.J. Aug. 31, 2015) ("Because common issues predominate on all other issues of law and fact presented to the Court, the Court need not assess the validity of Plaintiff's damages model at this stage.").

[18]    *Compare* Doc. 84 at 2, n.2 ("The Court . . . conducted an in-depth analysis of the alleged disclosures and found that many of them are allowed to disclose ***new, pertinent information*** revealing the falsity of Defendants' prior statements.") with Opp. at 2 ("the publication by the

that after various disclosures on May 28, 2015, it was no longer reasonable for an investor to rely on the alleged misstatements and omissions.  Opp. at 12, 18-19.  This argument is essentially a "truth-on-the-market defense," which is inappropriate on a motion for class certification.[19] Defendants' authority does not compel a different result.[20]  Moreover, even if the May 28, 2015 disclosures disclosed some risk, Defendants' misleading Class Period statements contradicted, and thus nullified, those disclosures.[21]

The fatal flaw of Defendants' argument is their failure to recognize that the Court's determination that Flowers' disclosure was "part of the total mix of information" is not the same as holding that the announcement completely "cured" the market of Defendants' prior misrepresentations.  Indeed, numerous courts have expressly rejected Defendants' argument.  For instance, one court astutely held the following:

> On the record before it, the Court is unable to say Defendants have presented

---

*Wall Street Journal* ("WSJ") . . . repeated information already in the market, **contained no new information**, and did not impact the price of Flowers' stock.").

[19]    *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 482 (2013) (holding that a defendant can rebut the presumption of reliance by demonstrating that "news of the [truth] credibly entered the market and dissipated the effects of [prior] misstatements," but that "[p]roof of that sort is a matter for trial" and "presumably" summary judgment); *BP III*, 800 F.3d at 687-88.  For the same reasons, Defendants' attacks on Dr. Feinstein's familiarity with Plaintiffs' allegations, which are subject to change based on discovery, summary judgment, and jury findings, are inappropriate and premature.  *BP III*, 800 F.3d at 689.

[20]    *See W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 291 (D. Minn. 2018) (noting that "[i]f the Court were to conclude that a material dispute of fact existed regarding the date of the corrective disclosure, **the Court may find it necessary to certify the longer class period** while acknowledging that the class period may be limited upon further evidence."); *Monroe Cty. Employees' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 358 (S.D.N.Y. 2014) (dismissing 10(b) claim for "**failing to plausibly allege** loss causation").

[21]    *See*, *e.g.*, ¶227 (Flowers "believes, based upon currently available facts, **that it is remote** that the ultimate resolution of any such pending matters will have a material adverse effect on its overall financial condition, results of operations or cash flows in the future."); *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1344-45 (N.D. Ga. 2007) (rejecting request to shorten class period based on a disclosure because there was "a substantial question of fact as to whether the release had cured the market or was itself misleading").

evidence sufficient to convince it there was no price impact associated with the May 6, 2015 disclosure. In fact, 3D Systems's stock price decreased by over five percent on May 6, 2015. Whether the stock price was caused by alleged misrepresentations or some other factor is for now an open question. Consequently, inasmuch as Defendants have failed to defeat the *Basic* "presumption through evidence that an alleged misrepresentation did not actually affect the market price of the stock[,]" *Halliburton II*, 134 S. Ct. at 2417, the Court declines to shorten KBC's proposed Class Period.

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*, 2017 WL 4297450, at *8 (D.S.C. Sept. 28, 2017). Here, Flowers' stock price plummeted 9% and 7.4% after the disclosures on August 10 and 11, 2016, respectively. ¶¶323-27. The Court's determination that Flowers' disclosure was part of the total mix of information did not constitute a finding that Flowers' disclosure "cured" the market of Defendants' prior misrepresentations, thus the Court should not shorten the Class Period.

Defendants argue confounding information will be difficult to desegregate from the impact of the alleged corrective disclosure (Opp. at 20, n.16; Stulz Report at ¶¶94-97); however, "Plaintiffs are not required to prove loss causation at the class certification stage and nothing in *Comcast* requires an expert to perform his analyses at the class certification stage."[22] Similarly, to the extent purchasers may have purchased with differing understandings of the risks involved (*e.g.*, Opp. at 14-15), such damages issues are also not appropriate for class certification.[23]

## III.    CONCLUSION

Based upon the foregoing, the Court should grant Plaintiffs' Motion.

---

[22]    *Thorpe*, 2016 WL 4006661, at *16 (S.D. Fla. Mar. 16, 2016); *City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5097883, at *13 (D.N.J. Aug. 31, 2015); *Erica P. John Fund, Inc. v. Halliburton Co.*, 309 F.R.D. 251, 260 (N.D. Tex. 2015).

[23]    *In re Symbol Techs., Inc. Sec. Litig.*, 2015 WL 3915477, at *7 (E.D.N.Y. June 25, 2015); *In re Diamond Foods, Inc., Securities Litig.*, 295 F.R.D. 240, 254 (N.D. Cal. 2013).

Dated:  November 13, 2018

GLANCY PRONGAY & MURRAY LLP

By: *s/ Ex Kano S. Sams II*
Lionel Z. Glancy (admitted *pro hac vice*)
lglancy@glancylaw.com
Robert V. Prongay (admitted *pro hac vice*)
rprongay@glancylaw.com
Ex Kano S. Sams II (admitted *pro hac vice*)
esams@glancylaw.com
Melissa C. Wright (admitted *pro hac vice*)
mwright@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

JOHNSON FISTEL, LLP
By: *s/ Michael I. Fistel, Jr.*
Michael I. Fistel, Jr.
michaelf@johnsonfistel.com
Georgia Bar No.: 262062
William W. Stone
williams@johnsonfistel.com
Georgia Bar No. 273907
David A. Weisz
davidw@johnsonfistel.com
Georgia Bar No. 134527
Murray House
40 Powder Springs Street
Marietta, GA 30064
Telephone: (770) 200-3104
Facsimile: (770) 200-3101

JOHNSON FISTEL, LLP
Frank J. Johnson (admitted *pro hac vice*)
frankj@johnsonfistel.com
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856


*Co-Lead Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned counsel for Lead Plaintiff hereby certifies that on November 13, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this matter.

Dated:  November 13, 2018          GLANCY PRONGAY & MURRAY LLP

By: *s/ Ex Kano S. Sams II*
Lionel Z. Glancy (admitted *pro hac vice*)
lglancy@glancylaw.com
Robert V. Prongay (admitted *pro hac vice*)
rprongay@glancylaw.com
Ex Kano S. Sams II (admitted *pro hac vice*)
esams@glancylaw.com
Melissa C. Wright (admitted *pro hac vice*)
mwright@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160