**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| In Re Flowers Foods, Inc.<br>Securities Litigation | Case No. 7:16-CV-00222-WLS<br><br>CLASS ACTION |

# PLAINTIFFS' MOTION TO EXCLUDE THE REPORT AND OPINIONS OF RENÉ M. STULZ

## TABLE CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................ 2

III.    ARGUMENT ...................................................................................................... 3

    A.    Courts Must Discharge Their Gatekeeping Function to Ensure that Only Reliable and Relevant Evidence is Admitted ........................................................ 3

    B.    Professor Stulz's Testimony Will Not Help the Trier of Fact Understand the Evidence or Determine a Fact in Issue Because His Opinions Usurp the Role of the Court and Are Unreliable ................................................................................ 5

        1.    Professor Stulz Attempts to Offer a Legal Opinion by Instructing the Court to Focus Solely Upon One Factor to Assess Market Efficiency Contrary to Controlling Authority ................................................................ 5

        2.    Professor Stulz Improperly Attempts to Opine on Ultimate Issues in Dispute in the Action ................................................................................ 7

        3.    Professor Stulz Advances an Erroneous and Inadmissible Legal Opinion on the Existence of a Common Damages Methodology That Constitutes an Improper Inquiry into Loss Causation and Materiality at the Class Certification Stage ...................................................................................... 9

III.    CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

CASES

*Allison v. McGhan Med. Corp.*,
  184 F.3d 1300 (11th Cir. 1999) ................................................................................... 5

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013)................................................................................................. 8, 11

*Angley v. UTi Worldwide Inc.*,
  311 F. Supp. 3d 1117 (C.D. Cal. 2018) ...................................................................... 6

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)...................................................................................................... 6

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ..................................................................................... 10

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989) ....................................................................... 1, 2, 5

*Catholic Healthcare W. v. U.S. Foodservice Inc.*,
  729 F.3d 108 (2d Cir. 2013)........................................................................................ 10

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*,
  322 F. Supp. 3d 676 (D. Md. 2018) ......................................................................... 6, 9

*City of Tuscaloosa v. Harcros Chems. Inc.*,
  158 F.3d 548 (11th Cir. 1998) ..................................................................................... 4

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)................................................................................................... 9, 10

*ConAgra Foods Food Ingredients Co., Inc. v. Georgia Farm Servs.*,
  No. 1-09-CV-00167 (WLS), 2011 WL 13244127 (M.D. Ga. Dec. 22 ...................... 7

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)................................................................................................ 1, 3, 4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)..................................................................................................... 11

*Första AP-Fonden v. St. Jude Med., Inc.*,
  312 F.R.D. 511 (D. Minn. 2015)................................................................................... 6

*Gariety v. Grant Thornton, LLP*,
    368 F.3d 356 (4th Cir. 2004) ................................................................................................ 6

*In re Computer Sciences Corp. Securities Litigation*,
    288 F.R.D. 112 (E.D. Va. 2012) ........................................................................................... 9

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) .............................................................................................. 10

*In re Flowers Foods, Inc. Sec. Litig.*,
    No. 7:16-CV-222 (WLS), 2018 WL 1558558 (M.D. Ga. Mar. 23, 2018)................................ 8

*In re Miller Indus., Inc. Sec. Litig.*,
    186 F.R.D. 680 (N.D. Ga. 1999)............................................................................................ 8

*In re Petrobras, Sec. Litig.*,
    862 F.3d 250 (2d Cir. 2017)................................................................................................... 6

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) ..................................................................................... 2, 3

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999)......................................................................................................... 3, 4

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) .............................................................................................. 10

*Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*,
    762 F.3d 1248 (11th Cir. 2014) ..................................................................................... 5, 6, 7

*Luna v. Marvell Tech. Grp., Ltd.*,
    No. C 15-05447 WHA, 2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ................................... 11

*McCorvey v. Baxter Healthcare Corp.*,
    298 F.3d 1253 (11th Cir. 2002) ...................................................................................... 3, 4

*Post-Confirmation Comm. for Small Loans, Inc. v. Martin*,
    No. 1:13-CV-195 (WLS), 2016 WL 1316685 (M.D. Ga. Mar. 31, 2016)............................ 4, 5

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)........................................................................................... 9, 10

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016) ........................................................................................ 11

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015)......................................................................................... 10, 11

*Teamsters Local 445 Freight Div. Pension, Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008)............................................................................................. 5

*Thorpe v. Walter Inv. Mgmt., Corp.*,
   No. 1:14-CV-20880-UU, 2016 WL 4006661 (S.D. Fla. Mar. 16, 2016) ................................... 8

*Torres v. County of Oakland*,
   758 F.2d 147 (6th Cir. 1985) ........................................................................................... 7

*Unger v. Amedisys Inc.*,
   401 F.3d 316 (5th Cir. 2005) ........................................................................................... 6

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) ....................................................................................... 4

*United States v. Parnell*,
   No. 1:13-CR-12 WLS, 2014 WL 2865979 (M.D. Ga. June 24, 2014)...................................... 7

*Waggoner v. Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017)............................................................................................... 6

## I.   INTRODUCTION

Pursuant to Rule 702 of the Federal Rules of Evidence, Lead Plaintiff Walter Matthews, along with Chris B. Hendley (collectively "Plaintiffs"), respectfully submit this memorandum of law in support of their motion for an order excluding the opinions and the Expert Report of René M. Stulz, Ph.D., dated October 5, 2018 ("Stulz Report").   Doc. 95-2.[1]   Defendants hired Professor Stulz to "review and comment" on the July 20, 2018 report and opinions of Plaintiffs' expert, Stephen P. Feinstein, Ph.D., CFA.  *Id*., ¶5.  The opinions expressed in the Stulz Report, however, fail to satisfy the requirements for admissibility embodied in Rule 702 and recognized in *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993), and its progeny.

Here, the Stulz Report and Professor Stulz's opinions suffer from three fatal flaws.  First, Professor Stulz renders a legal opinion he is not qualified to offer—and which is inadmissible—when he urges the Court to consider *only* the fifth factor in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), and disregard all others, in evaluating market efficiency.  Second, Professor Stulz improperly attempts to opine on issues that are within the province of the fact-finder in this action.  Finally, the Court should also exclude the Stulz Report and Professor Stulz's opinions because he advances an erroneous and inadmissible legal opinion regarding the existence of a common damages methodology that constitutes an improper inquiry into loss causation and

---

[1]     Unless otherwise indicated, all "Doc." references are to docket entries on the Court's Electronic Case Filing System.  Unless otherwise stated, all "Rules" references are to the Federal Rules of Evidence, all emphasis is added, and all internal citations and footnotes are omitted. Defendants are Flowers Foods, Inc. ("Flowers" or the "Company"), George E. Deese, Allen L. Shiver, Steve Kinsey, and Karyl H. Lauder (collectively "Defendants").   Professor Stulz's deposition testimony is reflected within the Declaration of Ex Kano S. Sams II in Support of Plaintiffs' Motion for Class Certification and Plaintiffs' Motion to Exclude the Report and Opinions of René M. Stulz, Exhibit 3.

materiality at the class certification stage.  Accordingly, Professor Stulz's Report and opinions are inadmissible, and the Court should therefore exclude them.

## II.     BACKGROUND

On July 23, 2018, Plaintiffs filed their motion for class certification.  Doc. 92.  In connection with their motion for class certification, Plaintiffs filed the Report on Market Efficiency of Professor Steven P. Feinstein, Ph.D., CFA, dated July 20, 2018 ("Feinstein Report").  Doc. 92-3.  Within the Feinstein Report, Dr. Feinstein examined the factors set forth within *Cammer*, 711 F. Supp. at 1286-87 and *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001), which courts routinely consider when evaluating whether a security trades in an efficient market.  *Id.*[2]  Based on his analysis, Dr. Feinstein found that each factor enumerated in *Cammer* and *Krogman* demonstrated that Flowers' stock traded within an efficient market during the Class Period of February 7, 2013 to August 10, 2016 ("Class Period").  *Id.*  Dr. Feinstein also opined that damages are subject to calculation on a class-wide basis using a common methodology.  *Id.*

On October 5, 2018, Defendants filed their Opposition to Plaintiffs' Motion for Class Certification.  Doc. 95.  Within their Opposition, Defendants submitted the Stulz Report.  Doc. 95-2.  In the Stulz Report, Professor Stulz criticized Dr. Feinstein's analysis of the *Cammer* and *Krogman* factors (*Id.*, ¶¶33-40), opining that "*Cammer* Factor 5, when properly tested, is the

---

[2]     The *Cammer* factors are: (1) the average weekly trading volume of the stock; (2) the number of securities analysts following and reporting on the stock;  (3) the extent to which market makers traded in the stock; (4) the issuer's eligibility to file a registration Form S-3 with the Securities and Exchange Commission ("SEC"); and (5) the demonstration of a cause and effect relationship between unexpected, material disclosures and changes in the stock's price. *Cammer*, 711 F. Supp. at 1286-87.  The *Krogman* factors are: (1) the capitalization of the company; (2) the bid-ask spread of the stock; and (3) the percentage of stock not held by insiders, known as "the float." *Krogman*, 202 F.R.D. at 474.

only reliable test of market efficiency from the perspective of financial economics." *Id*., ¶35.

Professor Stulz also opined that even if the market for Flowers' securities were efficient, there

can be no price impact attributable to the alleged corrective disclosures at the end of the Class

Period. *Id*., ¶¶41-82. Finally, Professor Stulz disputed that damages are subject to calculation on

a class-wide basis. *Id*., ¶¶83-101.

## III. ARGUMENT

### A. Courts Must Discharge Their Gatekeeping Function to Ensure that Only Reliable and Relevant Evidence is Admitted

Rule 702 provides the standard for the admissibility of expert witnesses:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a)      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b)      the testimony is based on sufficient facts or data;
(c)      the testimony is the product of reliable principles and methods; and
(d)      the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In making admissibility determinations, district courts have a duty to perform

the gatekeeping role of ensuring expert testimony is "not only relevant, but reliable." *Daubert*,

509 U.S. at 589 (1993). "[T]he test of reliability is flexible" in that "the law grants a district

court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect

to its ultimate reliability determination." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137,

141-42 (1999) (emphasis in original). Even with this flexible standard, however, the Court must

still "conduct an exacting analysis of the proffered expert's methodology." *McCorvey v. Baxter

Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).

Accordingly, before an expert's opinion and testimony can reach a jury, the Court must

determine that the offered expert testimony is "properly grounded, well-reasoned, and not

speculative." *United States v. Frazier*, 387 F.3d 1244, 1296 (11th Cir. 2004) (Barkett, J., concurring).  As this Court has recognized, this process "is critical because unreliable expert testimony has the power and potential to mislead or confuse a lay juror."  *Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, No. 1:13-CV-195 (WLS), 2016 WL 1316685, at \*3 (M.D. Ga. Mar. 31, 2016).  Thus, the Court must engage in a three-part inquiry and consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems. Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).

Daubert* identified four nonexclusive factors for assessing the reliability of an expert's reasoning or methodology.  These factors include: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community."  *McCorvey*, 298 F.3d at 1256 (citing *Daubert*, 509 U.S. at 593-94).  The Court may consider other relevant factors outside of the traditional *Daubert* factors, so long as the Court's gatekeeping inquiry is "tied to the facts of a particular case."  *Kumho*, 526 U.S. at 150.

Courts must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at 152.  Additionally, the proponent of the expert testimony carries the burden to show that their expert's opinion is

reliable by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999); *Martin*, 2016 WL 1316685, at *4.

> **B.      Professor Stulz's Testimony Will Not Help the Trier of Fact Understand the Evidence or Determine a Fact in Issue Because His Opinions Usurp the Role of the Court and Are Unreliable**
>
> > **1.      Professor Stulz Attempts to Offer a Legal Opinion by Instructing the Court to Focus Solely Upon One Factor to Assess Market Efficiency Contrary to Controlling Authority**

Professor Stulz opines that the fifth *Cammer* factor—"a cause-and-effect relationship between new information and price response"—is determinative of market efficiency "from the perspective of financial economics." Doc. 95-2, ¶35. Indeed, Professor Stulz argues that "*Cammer* Factors 1-4 and the *Krogman* Factors do not provide evidence of market efficiency" and "are not empirical tests of market efficiency." *Id.*, ¶34.

Despite Professor Stulz's attempt to evade exclusion by claiming his opinions relate to principles of "financial economics," his opinions not only impermissibly invade the province of the finder of fact and implicate legal matters, but they also contradict Eleventh Circuit authority that is binding upon this Court. Indeed, in *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248 (11th Cir. 2014), the Eleventh Circuit *rejected* the very premise that permeates Professor Stulz's market-efficiency analysis:

> ***Neither are we persuaded by Regions's argument that a finding of market efficiency always requires proof that the alleged misrepresentations had an immediate effect on the stock price***. Although many Circuit Courts have described cause-and-effect as the most important of the *Cammer* factors, *see, e.g., Teamsters Local 445 Freight Div. Pension, Fund v. Bombardier Inc.*, 546 F.3d 196, 207 (2d Cir. 2008), ***Regions does not point us to any court that has adopted the unwavering evidentiary requirement it urges upon us. Nor could it. Even the Cammer court itself did not establish such a strict evidentiary burden at the class certification stage***. 711 F. Supp. at 1287 (noting that proof of the cause-and-effect factor "would be helpful" to the efficiency analysis). ***This case presents a perfect example of why an inflexible requirement would run contrary***

> ***to the market principles that motivated the decision in Basic*** [*Inc. v. Levinson*, 485 U.S. 224 (1988)].

*Id.* at 1256.  Other courts have held similarly.  *See, e.g.*, *Waggoner v. Barclays PLC*, 875 F.3d 79, 98 (2d Cir. 2017), *cert. denied,* 138 S. Ct. 1702 (2018) (holding that satisfying the fifth *Cammer* factor is unnecessary if other indicia of market efficiency exist); *In re Petrobras Sec.*, 862 F.3d 250, 277-78 (2d Cir. 2017) (recognizing "the potential probative value of indirect evidence of market efficiency"); *Unger v. Amedisys Inc.*, 401 F.3d 316, 325 (5th Cir. 2005) ("When a court considers class certification based on the fraud on the market theory, it must engage in thorough analysis, weigh the relevant factors, require both parties to justify their allegations, and base its ruling on admissible evidence"); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 368 (4th Cir. 2004) ("to determine whether a security trades on an efficient market, a court should consider factors such as, among others, whether the security is actively traded, the volume of trades, and the extent to which it is followed by market professionals").

Accordingly, "[c]ourts have routinely found a market efficient based on a showing that the first four *Cammer* factors only are met." *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 689 (D. Md. 2018); *see also Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1121 (C.D. Cal. 2018) ("Because there is no evidence disputing the first four *Cammer* factors and the *Krogman* factors weigh in favor of market efficiency, the Court finds Plaintiff has met its burden of showing market efficiency."); *Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 520 (D. Minn. 2015) ("A plaintiff's shortfall on the fifth *Cammer* factor alone does not outweigh, as here, showings on many other relevant factors").

Thus, by asserting that the fifth *Cammer* factor "is the ***only*** reliable test of market efficiency" (Doc. 95-2, ¶35), Professor Stulz is attempting to issue a ***legal*** opinion on the nature

of the evidence required to establish market efficiency.  Thus, Professor Stulz improperly attempts to usurp the Court's role by advocating that the Court disregard established factors to assess market efficiency contrary to binding Eleventh Circuit authority.  "The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury." *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (finding that because "testimony was couched as a legal conclusion, it was not helpful to the jury").

As this Court has held, courts should exclude expert testimony that "is unhelpful to the jury." *United States v. Parnell*, No. 1:13-CR-12 WLS, 2014 WL 2865979, at *3 (M.D. Ga. June 24, 2014).  Because Professor Stulz's impermissible legal opinion contradicts binding Eleventh Circuit authority in *Local 703* (762 F.3d 1248), the Court should exclude the Stulz Report and his opinions.

### 2. Professor Stulz Improperly Attempts to Opine on Ultimate Issues in Dispute in the Action

The Court should also exclude the Stulz Report and his opinions because Professor Stulz attempts to opine on issues that are within the province of the fact finder.  As this Court has held previously, when an expert attempts to opine on "the ultimate issues in dispute" in a matter, such questions of fact must be "left to the determination of the jury upon the facts and circumstances as shown by the evidence." *ConAgra Foods Food Ingredients Co., Inc. v. Georgia Farm Servs.*, No. 1-09-CV-00167 (WLS), 2011 WL 13244127, at *1–2 (M.D. Ga. Dec. 22, 2011).  As a result, courts should exclude the opinions of purported experts that invade the role of the finder-of-fact. *Id*.

That is precisely the case here.  For instance, Professor Stulz states that the statistically-significant stock-price declines alleged within Plaintiffs' Complaint were not due to the

correction of Defendants' alleged misrepresentations and omissions. Rather, Professor Stulz opines that because "the alleged corrective disclosures on August 10 and 11, 2016 either represented the materialization of known risks or did not contain new value-relevant information," the "price declines were not due to the correction of misrepresentations reflected in the price on those dates." Doc. 95-2, ¶¶42, 44. Indeed, Professor Stulz's opinions completely contradict this Court's order in which the Court found that "at least some of the alleged disclosures were corrective in that they collectively revealed that Flowers' prior statements about its classification of distributors were misleading." *In re Flowers Foods, Inc. Sec. Litig.*, No. 7:16-CV-222 (WLS), 2018 WL 1558558, at \*20 (M.D. Ga. Mar. 23, 2018). Professor Stulz also opines that investors were purportedly fully on notice regarding specific risks associated with Flowers' DSD model during the Class Period. Id., ¶¶50-60. These merits issues, however, are not for Professor Stulz to decide as an expert—they are ultimate issues for the fact-finder to determine. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 481-82 (2013) (rebutting "'the [fraud-on-the-market] presumption of reliance' . . . by demonstrating that 'news of the [truth] credibly entered the market and dissipated the effects of [prior] misstatements' . . . is a matter for trial (and presumably also for a summary judgment motion. . . .").

Professor Stulz's price-impact analysis, moreover, improperly rests upon his denial of Plaintiffs' allegations. Contrary to Professor Stulz's disbelief of Plaintiffs' allegations, "the Court must accept the allegations in the Complaint as being true in considering class certification." *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-CV-20880-UU, 2016 WL 4006661, at \*4 (S.D. Fla. Mar. 16, 2016); *In re Miller Indus., Inc. Sec. Litig.*, 186 F.R.D. 680, 684 (N.D. Ga. 1999). Indeed, courts have rejected similar attempts "by defendants to ignore plaintiffs' allegations of market inflation and conflate the consistency of the inflation with a lack of price

impact." *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 690 (D. Md. 2018); *In re Computer Sciences Corp. Securities Litigation*, 288 F.R.D. 112, 120–21 (E.D. Va. 2012). Professor Stulz's failure to adhere to these principles renders his opinions unreliable and subject to exclusion.

3. **Professor Stulz Advances an Erroneous and Inadmissible Legal Opinion on the Existence of a Common Damages Methodology That Constitutes an Improper Inquiry into Loss Causation and Materiality at the Class Certification Stage**

The Court should also exclude the Stulz Report and Professor Stulz's opinions because he advances an erroneous and inadmissible legal opinion regarding the existence of a common damages methodology that constitutes an improper inquiry into loss causation and materiality at the class certification stage. Specifically, Professor Stulz opines on whether Dr. Feinstein has proposed a methodology designed to measure only damages attributable to the theories of liability alleged. Doc 95-2 at ¶¶83-101. Professor Stulz incorrectly concludes that Dr. Feinstein failed to do so. *Id*. In reaching that conclusion, however, Professor Stulz advocates a standard that contradicts binding authority from the Supreme Court in *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)—as well as circuit courts that have declared that *Comcast* "did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015). The holding in *Comcast* "was narrower" because the Supreme Court declared "that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury; but the Court did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate

predominance." *Id.*[3]

Indeed, Professor Stulz departs from binding Supreme Court precedent by demanding a level of detail that is manifestly unnecessary at this stage of the proceedings.  As courts have recognized, the Supreme Court's decision in "*Comcast* does not mandate . . . that damages are capable of measurement on a classwide basis." *Id.* at 402.  Instead, *Comcast* merely requires that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015).

Despite these principles, Professor Stulz opines that, among other things, that Dr. Feinstein purportedly has not explained how: (1) his damage approach can reliably disentangle price reactions that reflect the materialization of a known risk (Doc. 95-2, ¶¶86-91); (2) his damage approach can reliably disentangle price reactions that reflect the market's valuation of collateral consequences (*id.*, ¶¶92-93); (3) his damage approach can reliably disentangle price reactions to confounding information on alleged corrective disclosure days (*id.*, ¶¶94-97); and (4) his damage approach would account for a disclosure alleged to be corrective but which

---

[3]     *See also In re Deepwater Horizon,* 739 F.3d 790, 817 (5th Cir. 2014) (construing the "principal holding of *Comcast* [as being] that a model purporting to serve as evidence of damages . . . must measure only those damages attributable to th[e] theory of liability on which the class action is premised"); *Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 799 (7th Cir. 2013) (construing *Comcast* as holding only "that a damages suit cannot be certified to proceed as a class action unless the damages sought are the result of the class-wide *injury* that the suit alleges" (italics in original)); *Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir. 2013) (interpreting *Comcast* to hold that class-action plaintiffs "must be able to show that their damages stemmed from the defendant's actions that created the legal liability"); *Catholic Healthcare W. v. U.S. Foodservice Inc.* (*In re U.S. Foodservice Inc. Pricing Litig.*), 729 F.3d 108, 123 n.8 (2d Cir. 2013) ("Plaintiffs' proposed measure for damages is thus directly linked with their underlying theory of classwide liability . . . and is therefore in accord with the Supreme Court's recent decision in *Comcast*. . . .").

purportedly could not have been disclosed at an earlier time (*id*., ¶¶98-99).

As many courts have held, however, the degree of specificity that Professor Stulz demands constitutes an improper inquiry into loss causation and materiality at the class certification stage. Indeed, in *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011), the Supreme Court declared that "[t]he question presented in this case is whether securities fraud plaintiffs must also prove loss causation in order to obtain class certification. We hold that they need not." *Id*. at 807. Similarly, in *Amgen*, the Supreme Court held that Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of [her] claim [is] susceptible to classwide proof." *Id*. at 469 (italics and alterations in original). As one court aptly held, "Defendants' argument that Professor Feinstein has not shown how he will disaggregate price inflation attributable to confounding events is not, as defendants would have it, an attack on his damages model, but is rather an inquiry into loss causation." *Luna v. Marvell Tech. Grp., Ltd.*, No. C 15-05447 WHA, 2017 WL 4865559, at *6 (N.D. Cal. Oct. 27, 2017). "Loss causation, however, need not be analyzed at the class certification stage." *Id*.; *see also Strougo v. Barclays PLC*, 312 F.R.D. 307, 327 (S.D.N.Y. 2016) (rejecting a requirement to show how "confounding information can be . . . disaggregated in order to determine . . . price inflation"). Thus, the opinions of Professor Stulz flatly contradict the Supreme Court's mandate in *Halliburton* and *Amgen* that Plaintiffs need not **prove** loss causation and materiality to obtain class certification. Thus, the Stulz Report and Professor Stulz's opinions are unreliable and subject to exclusion.

## III.   CONCLUSION

Professor Stulz's flawed and inadmissible legal opinions require the exclusion of the Stulz Report and his opinions. Accordingly, Plaintiffs respectfully request that the Court grant

this motion in its entirety and exclude such putative expert evidence.

Dated:  November 13, 2018                         GLANCY PRONGAY & MURRAY LLP

                                                 By: *s/ Ex Kano S. Sams II*
                                                 Lionel Z. Glancy (admitted *pro hac vice*)
                                                 lglancy@glancylaw.com
                                                 Robert V. Prongay (admitted *pro hac vice*)
                                                 rprongay@glancylaw.com
                                                 Ex Kano S. Sams II (admitted *pro hac vice*)
                                                 esams@glancylaw.com
                                                 Melissa C. Wright (admitted *pro hac vice*)
                                                 mwright@glancylaw.com
                                                 1925 Century Park East, Suite 2100
                                                 Los Angeles, CA 90067
                                                 Telephone: (310) 201-9150
                                                 Facsimile: (310) 201-9160

                                                 JOHNSON FISTEL, LLP
                                                 By: *s/ Michael I. Fistel, Jr.*
                                                 Michael I. Fistel, Jr.
                                                 michaelf@johnsonfistel.com
                                                 Georgia Bar No.: 262062
                                                 William W. Stone
                                                 williams@johnsonfistel.com
                                                 Georgia Bar No. 273907
                                                 David A. Weisz
                                                 davidw@johnsonfistel.com
                                                 Georgia Bar No. 134527
                                                 Murray House
                                                 40 Powder Springs Street
                                                 Marietta, GA 30064
                                                 Telephone: (770) 200-3104
                                                 Facsimile: (770) 200-3101

                                                 JOHNSON FISTEL, LLP
                                                 Frank J. Johnson (admitted *pro hac vice*)
                                                 frankj@johnsonfistel.com
                                                 655 West Broadway, Suite 1400
                                                 San Diego, CA 92101
                                                 Telephone: (619) 230-0063
                                                 Facsimile: (619) 255-1856


                                                 *Co-Lead Counsel for Lead Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Lead Plaintiff hereby certifies that on November 13, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this matter.

Dated:  November 13, 2018

GLANCY PRONGAY & MURRAY LLP

By: *s/ Ex Kano S. Sams II*
Lionel Z. Glancy (admitted *pro hac vice*)
lglancy@glancylaw.com
Robert V. Prongay (admitted *pro hac vice*)
rprongay@glancylaw.com
Ex Kano S. Sams II (admitted *pro hac vice*)
esams@glancylaw.com
Melissa C. Wright (admitted *pro hac vice*)
mwright@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160